UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRADY HARRIS, | No. 2:16-cv-0830 TLN DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JEFF MACOMBER, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On February 9, 2018, defendant Leavitt filed a motion to dismiss this action against him[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 34). For the reasons stated below, the court will recommend herein that the motion be granted in part and denied in part.

**I.    RELEVANT PROCEDURAL HISTORY**

Plaintiff filed his original civil rights complaint on April 21, 2016. (ECF No. 1). On April 29, 2016, the previously assigned magistrate judge screened the complaint. In so doing, it was determined that plaintiff had alleged two discrete incidents that had occurred when he was

---

[1] Defendant Leavitt is represented by separate, private counsel. All other remaining named defendants are represented by the Office of the Attorney General.

housed at California State Prison – Sacramento. (See ECF No. 4 at 3). One of the incidents alleged retaliation in April 2014 by a prison official in the form of falsely charging him with hoarding because plaintiff had threatened to file a grievance against one of them. This, in turn, led to mistreatment by other defendants, including, but not limited to, the discontinuation of his pain medication. (See id. at 3). The other incident alleged mistreatment, humiliation, physical abuse and the use of unnecessary force in November 2014 by multiple prison officials after plaintiff had filed a grievance and had had an unpleasant verbal exchange with one of the named defendants. (See id. at 3-4).

Because the two claims were not properly joined as required by Federal Rule of Civil Procedure 20(a), the court dismissed the complaint with leave to amend. (See ECF No. 4 at 4, 7-9). At that time, plaintiff was informed that any amended complaint could raise claims from either event, but not from both. (See id. at 7-8).

On May 25, 2016, plaintiff filed the instant first amended complaint ("FAC"). (ECF No. 10). In it, plaintiff raised claims stemming from the November 2014 incident. (See generally id.).

On August 3, 2016, the matter was reassigned to the undersigned. (ECF No. 11). A cursory screening of the FAC found that it states cognizable claims for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b). (ECF No. 15 at 2). As a result, service was determined to be appropriate on defendants K. Rose, J. Munoz, M. Fong, S. Williamson, D. Calderon, M. Thompson, E. Cervantes, T. Fuller and D. Leavitt. (See id. at 5). Defendants Jeff Macomber, Bobbala and L. Daciois, who had been named as defendants in the original complaint (see ECF No. 1 at 2, 4), were dismissed from the action (see ECF No. 15 at 5).

On November 17, 2017, all defendants represented by the Office of the Attorney General filed an answer. (ECF No. 25). A discovery and scheduling order was issued for plaintiff and those defendants the same day.[2] (ECF No. 26). On February 9, 2018, defendant Leavitt filed the instant motion to dismiss. (ECF No. 34). On June 20, 2018, plaintiff filed his opposition to

---

[2] Because this order solely addresses defendant Leavitt's motion to dismiss, the subsequent procedural history of the remaining defendants' filings is not detailed herein.

2

defendant Leavitt's motion to dismiss. (ECF No. 57). Defendant Leavitt did not file a reply. The motion is deemed submitted and ready for review.

## II. PLAINTIFF'S CLAIMS[3]

Plaintiff alleges that defendant Leavitt and/or the other named defendants violated his rights under the First, Sixth, Eighth and Fourteenth Amendments as well as his rights under 42 U.S.C. § 1997 when, in November 2014: (1) excessive force was used against him by defendants Munoz and Fong while handcuffing him too tightly and escorting plaintiff after plaintiff had had a verbal altercation with defendant Munoz; (2) his defendant escorts pushed him to walk faster than he could due to his mobility restriction and his inability to use his prescribed medical cane; (3) defendant Leavitt and other defendants "responded with attention" to plaintiff's escort as his shorts fell during the escort, exposing his buttocks and genitals to onlookers on the exercise yard; (4) defendants Munoz and Fong ignored plaintiff's repeated requests to help him pull up his shorts during the escort; (5) defendant Munoz dismissed plaintiff's pleas for assistance with his shorts, indicating that plaintiff deserved the treatment for "running [his] mouth" and filing 602 grievance forms in August 2014 against people for having fallen down the stairs; (6) some defendants then slammed plaintiff to the concrete, scraping his face, injuring his shoulder and aggravating his previously injured back, and (7) some defendants raised plaintiff's handcuffed arms over his head and proceeded to kick and punch him in his arms, legs and torso, inflicting pain and dislocating his shoulder. (See ECF No. 10 at 5-7).

As a result, plaintiff states he had a bruised face and shoulders, a scarred shoulder, swollen and bruised wrists, pain and aggravation to his pre-existing back injury, and discomfort in both legs, and he contends that he suffered degradation and humiliation. (See id. at 5). Plaintiff also states that the incident had a "chilling effect" on him. (See id. at 5).

In addition, plaintiff alleges that after having a medical evaluation which documented some of his injuries, defendant Leavitt and/or other defendants further violated these rights of plaintiff's when they wrongfully: (8) conspired to further retaliate and conceal plaintiff's assault

---

[3] The enumeration of facts alleged by plaintiff herein is done for clarification and streamlining purposes. It is not intended to suggest that each fact is a separate claim.

3

by filing false peace officer reports which charged plaintiff with an assault against defendant Munoz.  (See ECF No. 10 at 7-8).

Finally, plaintiff alleges that these rights were again violated when:  (9) after filing a grievance in late November 2014 claiming use of excessive force, in January 2015, defendant Macomber improperly ignored camera footage that had recorded plaintiff's assault and upheld defendants' use of excessive force against him; (10) that same month, he was wrongfully convicted of assault of defendant Munoz based on defendants' "bogus retaliatory" charge filed against him, and (11) his appeal of the assault conviction was improperly upheld by defendant Macomber.  (See id. at 8-9).

### III. DISCUSSION

#### A. Rule 12(b)(6)

##### 1. Defendant Leavitt's Motion to Dismiss

Defendant Leavitt has moved for the dismissal of plaintiff's FAC on the grounds that it fails to state sufficient facts to allege claims of violations of plaintiff's Eighth, First, Sixth, and Fourteenth Amendment rights, and it fails to state sufficient facts to allege a claim of a violation of 42 U.S.C. § 1997.  (See ECF No. 34 at 1).  He claims that the only allegations lodged against him are that:  (1) he "responded" to defendants Munoz and Fong's escort of plaintiff, and (2) he, along with other defendants, filed false reports charging plaintiff with an assault and battery on defendant Munoz.  (See ECF No. 34-1 at 2).  Defendant Leavitt notes that plaintiff claims that he was punished as a result of the false reports, and that the "alleged false statements" that plaintiff mentions "are not described with any specificity."  (See ECF No. 31-4 at 2).

##### 2. Applicable Law

Federal of Rule Civil Procedure 12(b)(6) permits an action to be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.

869 (1969). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). Thereafter, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)

Conversely, to survive a motion to dismiss for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." See Twombly, 550 U.S. at 555-57. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### B. Eighth Amendment Claim: Excessive Force

#### 1. Parties' Arguments

Regarding plaintiff's Eighth Amendment argument, plaintiff's FAC states that during his escort through the exercise yard by defendants Munoz and Fong, while he was still stripped down to boxer shorts and a t-shirt, his shorts began to fall down. As a result, his buttocks and genitals were exposed. (See ECF No. 10 at 6). This, plaintiff contends, "prompt[ed] prisoners on the exercise yard to laugh at [my] humiliation." (Id. at 6) (brackets added). The FAC then states that defendant Leavitt along with several other defendants "responded with attention on the escort." (Id. at 6). When plaintiff asked if defendants could slow down and pull up his shorts for him, defendant Munoz stated, "So what [?] You should of [sic] thought of that before you started to run your mouth and [started] filing 602's [sic] against people for falling down the stairs." (Id. at 6) (brackets added). This, plaintiff contends, constituted an admission as to why plaintiff was
////

5

being mistreated, namely, because he had filed a grievance in August 2017 after falling down the stairs. (See id. at 6-7).

Plaintiff further states that several of the defendants who "focused attention on [his] escort laughed at defendant Munoz's comment in agreement." (ECF No. 10 at 7). Plaintiff then states that defendants Munoz, Fong, Thompson, Williamson and Calderon "act[ed] in concert," slamming him on the concrete floor, which scraped the left side of his face and shoulder and aggravated his previously injured back. These same defendants then began to "force [my] handcuffed arms raised high from behind then commence[d] to kick and punch with closed fist[s] [my] arms, legs, and torso repeatedly imposing vast pain and dislocation of [my] shoulders." (Id. at 7) (brackets added).

Plaintiff goes on to state that after receiving a medical evaluation which documented some of his injuries, "Defendant's [sic] Rose, Munoz, Fong, Williamson, Calderon, Thompson, Cervantes, Fuller, and Leavitt each conspired to further retaliate as well as conceal the assault imposed on [me] by filing false peace officer reports charging [me] with a bogus assault against defendant Munoz." (ECF No. 10 at 7-8) (brackets added). "On November 30, 2014, [I] filed a grievance concerning excessive force used by defendants." (Id. at 8) (brackets added).

In January 2015, plaintiff had a disciplinary hearing "on the bogus retaliatory assault charge" that allegedly happened to defendant Munoz. It resulted in plaintiff being found guilty of assault. (See id. at 8).

In response to plaintiff's Eighth Amendment claim of excessive force, defendant Leavitt argues that plaintiff's FAC fails to allege that he used any degree of force against plaintiff. Therefore, he argues, plaintiff has failed to state an Eighth Amendment claim against him. (See ECF No. 34-1 at 4).

**2. Applicable Law**

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the

6

[Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (brackets added) (referencing Whitley v. Albers, 475 U.S. 312 (1986)).

Incarcerated prisoners retain a limited right to bodily privacy. Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988). "Shielding one's unclothed figure from the view of strangers . . . is impelled by elementary self-respect and personal dignity." Id.

### 3. Analysis

Defendant Leavitt's statement that the FAC fails to allege that he specifically used any degree of force against plaintiff is, on its face, technically accurate. However, throughout the FAC, when describing the events that occurred, at times plaintiff identifies specific defendants who engaged in specific acts, and at times plaintiff speaks about defendants and their actions in general. (See generally ECF No. 10). As a result, with respect to defendant Leavitt, to what extent he participated in the alleged humiliation and excessive beating of plaintiff is not completely clear.[4]

Despite these facts, the court is required to construe the complaint in a light that is most favorable to plaintiff and to resolve all doubts in the plaintiff's favor. See Jenkins, 395 U.S. at 421 (stating for purposes of motion to dismiss, material allegations of complaint are taken as admitted, and complaint is to be liberally construed in favor of plaintiff); see generally Twombly, 550 U.S. at 563; see also Sanjuan, 40 F.3d at 251. The undersigned does so herein.

Plaintiff clearly identifies defendant Leavitt as someone who became a part of his escort after he had been handcuffed. (See ECF No. 10 at 5-6). Plaintiff states that defendants who "focused attention on [his] escort" laughed in agreement at defendant Munoz's statement that he was being treated the way he was by defendants because he had previously filed a grievance after falling down the stairs. (See id. at 6-7). Plaintiff's FAC then proceeds to name specific

---

[4] To the extent that plaintiff's opposition attempts to provide more factual insight on this matter, when considering a motion to dismiss, the court may not consider new facts provided in an opposition to the motion. See Aktar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012); see also Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

7

defendants who are said to have slammed him on the ground, injuring his face, shoulder and back and who kicked and punched him in his arms, legs and torso.  (See ECF No. 10 at 7).  However, in the very next sentence, plaintiff then specifically identifies defendant Leavitt and several other defendants as ones who "conspired to further retaliate as well as conceal [plaintiff's] assault" by filing false reports which charged plaintiff with a "bogus assault" on defendant Munoz.  (See id. at 7-8) (underline added).

Implicit in plaintiff's statement that defendant Leavitt and other defendants "conspired to further retaliate" is that defendant Leavitt had participated in the initial retaliation led by defendant Munoz, namely, the beating of plaintiff that occurred after plaintiff had been escorted handcuffed across the prison yard with his shorts down and his buttocks and genitals exposed to everyone.  Pleadings are to be construed so as to do justice.  Fed. R. Civ. P. 8(e).  Viewed in a light most favorable to plaintiff if, while plaintiff was restrained in handcuffs, lying on the ground, and not resisting defendants' efforts to secure him, if defendant Leavitt was part of the group that punched and kicked plaintiff, and/or if defendant Leavitt participated in the humiliating escort of plaintiff and forbid him to use his cane, there does not appear to be a penological interest that was served by defendant Leavitt doing this.  Therefore, a threshold claim of excessive physical force used by defendant Leavitt in violation of plaintiff's Eighth Amendment rights has been established.

Consequently, defendant Leavitt's motion to dismiss this excessive force claim shall be denied.

**C.  Sixth Amendment Claim**

**1.  Parties' Arguments**

Plaintiff's FAC claims that his Sixth Amendment rights have been violated.  (See ECF No. 10 at 5).  However, in the remainder of the pleading, plaintiff provides neither facts nor law to support this claim, nor does he describe how defendant Leavitt violated his Sixth Amendment rights.  (See generally id.).

Defendant Leavitt argues that because:  (1) the Sixth Amendment affords liberties to criminal defendants; (2) plaintiff makes no allegations that he interfered with any of plaintiff's

8

Sixth Amendment rights, and (3) a disciplinary proceeding is not a criminal proceeding, plaintiff's Sixth Amendment claim is inapplicable given the facts. (See ECF No. 34-1 at 4-5).

### 2. Applicable Law

The Sixth Amendment to the Constitution applies only to criminal proceedings. Olhausen v. Comm'r, 273 F.2d 23, 27 (9th Cir. 1959). It does not apply to administrative hearings. See Hanna v. Larche, 363 U.S. 420, 440 (1960); see generally S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984) (stating administrative investigation adjudicates no legal rights). The "fact that a proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment." Middendorf v. Henry, 425 U.S. 25, 37 (1976); Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005) (quoting Middendorf). On the contrary, [p]rison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (brackets added).

### 3. Analysis

Plaintiff's FAC sheds no light on what plaintiff is intending to argue with respect to any Sixth Amendment rights he claims have been violated. The FAC only mentions the Sixth Amendment in a cursory manner at the beginning of his claim. (See generally ECF No. 10 at 5-9). To the extent that plaintiff's opposition attempts to provide more detail of his legal argument, suggesting that under the Sixth Amendment, he should have been provided an "impa[r]tial tribunal fact finder," during his disciplinary proceeding, or that Sixth Amendment protections should have applied to his disciplinary hearing because actual criminal charges were also pending related to the same alleged assault, or that "Defendant Leavitt "can not [sic] also file false charges to cover up a violation of plaintiff's rights" (see ECF No. 57 at 6), these attempts to add legal context to his Sixth Amendment claim are inadequate because plaintiff's disciplinary hearing was not a criminal proceeding eligible for constitutional protection under the Sixth Amendment.

For this reason, no relief can be provided to plaintiff based on this claim against defendant Leavitt. Accordingly, it shall be dismissed.

////

**D.     First Amendment Claims:  Retaliation**

   **1. Parties' Arguments**

Plaintiff argues that defendant Leavitt violated his First Amendment rights when he retaliated against plaintiff. (<u>See</u> ECF No. 10 at 6-7; <u>see also</u> ECF No. 57 at 6). Referencing his FAC, plaintiff points to defendant Munoz's admission during the escort that plaintiff was being treated the way he was because he had "run his mouth" and had "file[d] 602[]s against people for falling down the stairs." (<u>See</u> ECF No. 57 at 6; <u>see also</u> ECF No. 10 at 6-8) (brackets added). The FAC notes that "several defendant[]s who focused attention on plaintiff's escort laughed at defendant Munoz's comment in agreement." (ECF No. 10 at 7) (brackets added). Plaintiff's opposition then appears to impute defendant Munoz's retaliatory statements to defendant Leavitt and other defendants given that they laughed at it and subsequently participated in plaintiff's beating with defendant Munoz for these reasons. (<u>See</u> ECF No. 57 at 6-7; <u>see also</u> ECF No. 10 at 6-7).

Plaintiff also alleges that defendant Leavitt and other defendants "further retaliate[d]" against him by concealing their assault on him and by filing "false peace officer reports" which charged him with a "bogus" assault of defendant Munoz. (<u>See</u> ECF No. 10 at 7-8). Plaintiff contends that because the First Amendment prohibits jail and prison officials from retaliating against inmates who exercise their protected right to file grievances, he has stated a cognizable claim against defendant Leavitt. (<u>See</u> ECF No. 57 at 7).

In response, defendant Leavitt first points out that plaintiff makes allegations against defendant Munoz that defendant Munoz retaliated against him because of a complaint plaintiff filed in August 2014, but plaintiff makes no such allegations against him. (<u>See</u> ECF No. 34-1 at 5). He acknowledges that plaintiff asserts that he filed a false report against plaintiff in an act of further retaliation. (<u>See</u> <u>id.</u> at 5). Defendant Leavitt argues, however, that because plaintiff has not identified the false statements that were made, the alleged retaliatory act cannot be determined. (<u>See</u> <u>id.</u> at 6). Furthermore, defendant Leavitt argues, for precisely what reason defendant Leavitt is to have retaliated is not clear. (<u>See</u> <u>id.</u> at 6). Finally, defendant Leavitt contends that to the extent that plaintiff alleges that the false report was made for the purpose of

10

covering up the misdeeds of defendant Munoz, a First Amendment claim cannot be supported because "[s]ubmitting a false report for the purpose of a cover-up . . . is not done in response to the exercise of protected conduct." (See id. at 6).

### 2. Applicable Law

"Of fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances' and to 'pursue civil rights litigation in the courts.'" Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005) (brackets in original) (quoting Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) and Schroder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995), respectively). "Because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Rhodes, 408 F.3d at 567.

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68; Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015) (citing Rhodes). A plaintiff who intends to assert a retaliation claim must show that the defendant was aware of plaintiff's prior protected conduct and that the protected conduct was "the 'substantial' or' motivating' factor" behind the defendant's alleged misconduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A prisoner need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)

### 3. Analysis

Accepting the allegations in plaintiff's FAC as true and construing his FAC in a light most favorable to him (see Hospital Bldg. Co., 425 U.S. at 740; see also Jenkins, 395 U.S. at 421), the court finds that plaintiff has stated actionable First Amendment claims against defendant Leavitt. Specifically, plaintiff has established a First Amendment claim as it relates to plaintiff's humiliation and beating by defendant Leavitt and others for having filed earlier grievances. He
////

has also established a First Amendment claim as it relates to the filing of false disciplinary reports by defendant Leavitt and others for having filed earlier grievances.

Plaintiff has stated that at a certain point during the incidents in question defendant Leavitt and other defendants "responded with attention on" plaintiff's escort on the yard. (See ECF No. 10 at 6-7). Thereafter, when plaintiff repeatedly asked for defendants to slow down and help him pull up his shorts, instead of doing so, defendants laughed in agreement at defendant Munoz's discounting of plaintiff's physical situation and at defendant Munoz's statement that plaintiff was being treated as he was (i.e., paraded on the yard at a fast pace without his cane with his shorts down and his genitals exposed) because he had filed grievances against individuals for having fallen down the stairs. (See id. at 6-7). The facts stated appear to indicate that plaintiff's subsequent beating by several defendants in his escort while he was restrained in handcuffs was contemporaneous with defendant Munoz's statement. (See generally id. at 5-7). Thus, it appears that plaintiff's beating was also part and parcel of defendants' retaliation against plaintiff for having filed grievances at the prison, an act which is protected by the Constitution.

In addition, plaintiff has stated that defendant Leavitt and others continued their retaliation against plaintiff for having filed grievances by subsequently filing false reports which alleged that plaintiff had assaulted defendant Munoz and that this ultimately led to plaintiff being found guilty of the charge.[5] (See ECF No. 10 at 7-9). He also clearly asserts that these retaliatory actions taken by defendant Leavitt and others had a chilling effect on him. (See generally id. at 5). These facts, if found to be true, do not appear to reasonably advance a legitimate correctional goal. Rhodes, 408 F.3d at 567-68; Jones, 791 F.3d at 1035.

The ability to file a grievance is an activity that is protected under the First Amendment. Rhodes, 408 F.3d at 567. Plaintiff's allegations against defendant Leavitt and the other defendants, if true, state First Amendment claims upon which relief could be granted.

////

---

[5] Defendant Leavitt's argument that plaintiff's claim that the false reports were filed in order to cover up the fact that defendants had beaten plaintiff is not actionable (see ECF No. 34-1 at 6) is correct.

1    For these reasons, defendant Leavitt's motion to dismiss with respect to these claims shall
2    be denied.

    **D.    Fourteenth Amendment Claim**

    **1. Parties' Arguments**

Plaintiff's FAC states that his Fourteenth Amendment rights were violated by defendants. (See ECF No. 10 at 5). In support of this claim, plaintiff then alleges that defendants filed false reports on plaintiff which ultimately led to his assault conviction and his subsequent punishment. (See id. at 7-9). However, the FAC does not make a clear link between the Fourteenth Amendment and the false reports. (See generally id.).

Defendant Leavitt argues that because plaintiff's claims which, if sufficiently pled, would be addressed by the First and Eighth Amendments, Supreme Court law directs that the claims should be analyzed under those amendments, not under the substantive due process contained within the Fourteenth Amendment. Furthermore, defendant Leavitt argues, it is unclear to him upon which clause of the Fourteenth Amendment (e.g., equal protection or due process) plaintiff is relying. (See ECF No. 34-1 at 6-7) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)).

In response, plaintiff first notes that the Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of life, liberty or property without due process of law. (See ECF No. 57 at 8). He then argues that the restrictions imposed upon him as a result of defendant Leavitt's and others' falsified report "created and imposed atypical and significant hardship on [him]" beyond the "ordinary incidents of prison life." (See id. at 8). Specifically, plaintiff was found guilty – despite the absence of proof of any assault on his part – which led to his placement in administrative segregation for ten to twelve months. This, plaintiff contends, was "so removed from the original terms of confinement" that it "amounted to deprivations of liberty." (See id. at 8).

    **2. Applicable Law**

    **a. No Constitutional Right to Be Free from False Accusations**

The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations. See Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986)

13

(stating filing of false disciplinary report against inmate not actionable under Section 1983 where procedural due process protections are provided); see also Hanrahan v. Lane, 747 F.2d 1137. 1141 (7th Cir. 1984) (stating same). Prisoners, however, are entitled to be free from arbitrary actions of prison officials. Wolff, 418 U.S. at 558; Hanrahan, 747 F.2d at 1140 (citing Wolff). The protections against such arbitrary action are the procedural due process requirements set forth in Wolff.[6] Hanrahan, 747 F.2d at 1141. Thus, filing a false disciplinary charge against an inmate is not actionable under Section 1983 where procedural due process protections are provided. Freeman, 808 F.2d at 951-52.

### b. No Constitutional Right to Be Free from Administrative Segregation

An inmate has no constitutionally protected right to be free from the punishment of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-67 (1983) (stating Due Process Clause does not create liberty interest in remaining in the general population or being free from administrative segregation); receded from by Sandin v. Conner, 515 U.S. 472 (1995); see May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (concluding prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement). On the contrary, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt, 459 U.S. at 468.

### 3. Analysis

Construing the argument in a light most favorable to plaintiff, the court presumes that plaintiff's Fourteenth Amendment claim relates to defendants' filing and processing of allegedly false reports which led to plaintiff's placement in administrative segregation. The FAC mentions the false reports, and plaintiff's opposition appears to meld the defendants' use of the reports and plaintiff's placement in administrative segregation to allege a violation of his liberty interest.

---

[6] The Wolff procedural due process requirements are: (1) advance, written notice of violation; (2) provision of at least 24 hours to prepare for committee appearance; (3) written statement of fact-finding; (4) the right to present witnesses and evidence where it would not be unduly hazardous to institutional safety; (5) an impartial decision-making body, and (6) assistance if inmate is illiterate or if issues are complex. Wolff, 418 U.S. at 564-70; see generally Hanrahan, 747 F.2d at 1140. These requirements protect prisoners from "arbitrary actions extinguishing their privileges." Hanrahan, 747 F.2d at 1140 (citation omitted).

(See ECF No. 10 at 7-8; see also ECF No. 57 at 7-8). Viewed in total, the court believes plaintiff is arguing that his procedural due process rights were violated when he was placed in administrative segregation unjustly based upon false reports about a made-up assault. In other words, his procedural due process rights were violated during his disciplinary hearing because false reports were used to determine his guilt.

This argument fails to state a claim upon which relief can be granted. This is primarily because plaintiff has not stated that he was denied procedural due process as required under Wolff at the hearing that took place prior to the finding of guilt and his subsequent placement into administrative segregation. (See generally ECF No. 10). It is also because the Constitution does not protect prisoners from the isolated act of having false reports filed against them. See Freeman, 808 F.2d at 951; see also Hanrahan, 747 F.2d at 1141. It does not protect prisoners from being placed in administrative segregation, either. Hewitt, 459 U.S. at 466-67; May, 109 F.3d at 565.

In sum, the false reports used and plaintiff's placement in administrative segregation because of them are not actions of constitutional proportions that require relief under the Due Process Clause of the Fourteenth Amendment. However, a claim with supporting facts that plaintiff's disciplinary hearing – whether wrongfully held or not – did not provide him with the procedural process required to be administered to him under Wolff likely would have created a viable procedural due process claim for plaintiff under the Fourteenth Amendment. Given that this is not the essence of plaintiff's Fourteenth Amendment argument, it fails to state a claim upon which relief may be granted.

Therefore, this claim must be dismissed against defendant Leavitt.

**E.     42 U.S.C. § 1997 Claims**

**1.  Parties' Arguments**

Lastly, in the FAC, plaintiff generally states that his rights have been violated under 42 U.S.C. § 1997. (See ECF No. 10 at 5). However, he neither provides facts nor makes an argument in support of this statement. (See generally id.). Defendant Leavitt's motion to dismiss points this out as well, further noting that plaintiff has failed to specify upon which subsections of

the statutes – from 1997a through 1997j – plaintiff is relying for relief.  (See ECF No. 34-1 at 7).
Therefore, he contends, the claim should be dismissed.

In response, plaintiff simply states, "Plaintiff has sufficiently stated his claims of First, Sixth, Eight[th] and Fourteenth Amendment along with the violation of [42] U.S.C. 1997(e)(a) [sic] claim."  (See ECF No. 57 at 8) (brackets added).  The court construes this to mean that plaintiff believes that Sections 1997a and 1997e provide him with statutory rights and that they have been violated.

### 2. Analysis

Plaintiff fails to allege precisely how these statutes are applicable to him and/or how they relate to defendant Leavitt.  Section 1997a discusses the discretionary authority of the Attorney General to initiate civil actions in situations where officials acting on behalf of the State have developed a pattern or practice of depriving inmates of rights, privileges or immunities secured by the Constitution or by the laws of the United States.  (See 42 U.S.C. § 1997a).  In sum, this statute does not afford plaintiff any specific rights under the law.

Section 1997e governs lawsuits brought by prisoners.  It provides guidance to prisoners, attorneys and the court about how to manage actions brought under Section 1983 and other federal law.  Nothing in it affords plaintiff any particular right or entitlement.

In light of these facts, plaintiff's Section 1997a and Section 1997e claims fail to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).

Therefore, defendant Leavitt's motion to dismiss this claim shall be granted.

## IV. CONCLUSION

Plaintiff has sufficiently stated Eighth and First Amendment claims against defendant Leavitt upon which relief can be granted.  He has not, however, sufficiently stated claims for relief against defendant Leavitt under the Sixth and Fourteenth Amendments or under 42 U.S.C. § 1997.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Leavitt's February 9, 2018 motion to dismiss this action against him pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 34) be GRANTED IN PART and

DENIED IN PART as follows:

    a. Defendant Leavitt's motion to dismiss plaintiff's, Sixth and Fourteenth Amendment claims and his 42 U.S.C. § 1997 claims be GRANTED for failure to state claims upon which relief can be granted, and

    b. Defendant Leavitt's motion to dismiss plaintiff's First and Eighth Amendment claims pursuant to Federal Rule of Civil Procedure 12(b)(6) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 22, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.CIVIL RIGHTS/harr0830.mtd.deny&grnt