1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GRADY HARRIS,                         No.  2:16-cv-0830 TLN DB P

12                 Plaintiff,

13        v.                               FINDINGS AND RECOMMENDATIONS

14   JEFF MACOMBER, et al.,

15                 Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action seeking relief under 42 U.S.C. § 1983.  Plaintiff claims that defendants used excessive

19   force, failed to protect him, and retaliated against him in violation of his constitutional rights.

20   Presently before the court is a motion for summary judgment filed on behalf of defendants[1]

21   Calderon, Rose, Munoz, Fong, Williamson, Fuller, Cervantes, and Thompson.  (ECF No. 118.)

22   For the reasons set forth below, the undersigned will recommend that the motion be granted in

23   part and denied in part.

24   ////

25   ////

26   _____

27   [1] Defendants Calderon, Rose, Munoz, Fong, Williamson, Fuller, Cervantes, and Thompson are
     represented by the Office of the Attorney General.  Defendant Leavitt is separately represented
     and filed a separate motion for summary judgment.  The undersigned will address defendant
28   Leavitt's motion for summary judgment separately.

                                          1

**BACKGROUND**

**I.    Relevant Procedural History**

From, May 25, 2016, to July 8, 2021, this action was proceeding on plaintiff's First Amended Complaint (FAC).  (ECF No. 10.)  The undersigned determined that the FAC stated potentially cognizable claims against defendants Rose, Munoz, Fong, Williamson, Calderon, Thompson, Cervantes, Fuller, and Leavitt.  (ECF No. 15.)  Following service, defendants Calderon, Cervantes, Fong, Fuller, Munoz, Rose, Thompson, and Williamson filed an answer (ECF No. 25) and the parties engaged in discovery.  Defendant Leavitt moved to dismiss (ECF No. 34) the complaint arguing that the FAC failed to allege he used force against plaintiff.  (ECF No. 34-1 at 4.)[2]

By order dated June 8, 2020, the District Judge assigned to this action granted in part and denied in part defendant Leavitt's motion to dismiss.  (ECF No. 86.)  Plaintiff was given leave to file an amended complaint.  Amendment was limited to plaintiff's First and Eighth Amendment claims against defendant Leavitt.  (Id. at 13.)  Plaintiff did not file an amended complaint within thirty days.  Defendant Leavitt moved for dismissal based on plaintiff's failure to file an amended complaint.  (ECF No. 90.)  Thereafter, plaintiff filed the Second Amended Complaint (SAC).  (ECF No. 96.)

The undersigned recommended that defendant Leavitt's second motion to dismiss be denied as moot.  (ECF No. 100.)  In plaintiff's objections to those findings and recommendations plaintiff stated that his SAC was not timely filed because the prison failed to forward the SAC to the court.  (ECF No. 102 at 2.)  When he realized, he resubmitted the SAC.  (Id.)  By order dated May 3, 2021, the district court adopted the findings and recommendations denying Leavitt's motion to dismiss.  (ECF No 105.)

Following the adoption of the findings and recommendations, the undersigned screened the SAC and reopened discovery for the limited purpose of allowing the parties to conduct discovery as to defendant Leavitt.  (ECF No. 106.)  Following the close of discovery defendants

---

[2] All page numbers cited herein are those assigned by the court's CM/ECF system and are not based on the parties' pagination of their materials.

1  Calderon, Rose, Munoz, Fong, Williamson, Fuller, Cervantes, and Thompson and defendant

2  Leavitt filed separate motions for summary judgment.  (ECF Nos. 118, 121.)  Plaintiff filed an

3  opposition responding to both motions for summary judgment.  (ECF No. 135.)  Defendants filed

4  separate replies to plaintiff's opposition.  (ECF Nos. 137, 139.)

5      **II.**       **Allegations in the Second Amended Complaint**

6        Plaintiff alleges the events giving rise to the claim occurred while he was incarcerated at

7  California State Prison, Sacramento (CSP-SAC).  (ECF No. 96 at 1.)  Plaintiff states that on

8  November 21, 2014, he was preparing to go to the yard when an officer told him to pull up his

9  boxers.  (Id. at 3.)  The officer also made an inappropriate comment about the size of plaintiff's

10  buttocks in front of other inmates and staff.  Plaintiff complied with the officer's orders and

11  handed over his clothes and cane to Munoz and Fong to be searched.  While getting dressed

12  Munoz told plaintiff to pull up his boxers followed by another rude comment.  Plaintiff responded

13  using "foul language."

14        Munoz ordered plaintiff to turn around to be handcuffed and plaintiff complied.  Munoz

15  and Fong began escorting plaintiff on the yard shirtless, hands cuffed behind him, and without his

16  cane.  Plaintiff asked for his cane as his pants and boxers began to fall down below his thighs.

17  Williamson, Calderon, Thompson, Fuller, Rose, Leavitt, and Valasquez joined the escort.

18  Plaintiff asked if the defendants could pull up his pants and boxers.  Plaintiff also asked if officers

19  could slow down the escort because he was having difficulty walking without his cane, with his

20  hands behind his back, and with his pants below his knees.  (Id. at 3-4.)  Leavitt and the other

21  officers and inmates on the yard laughed as plaintiff's genitals and buttocks were exposed.  (Id. at

22  4.)

23        Near the gym, Munoz responded to plaintiff's request to slow down and pull up his pants

24  by stating, "So what! You should have thought about that before you started filing 602's[3] against

25  people for falling down the stairs and running your mouth."

26  

27  [3] At the relevant time, the California Department of Corrections and Rehabilitation's
administrative grievance process was initiated by submission of a CDC Form 602.  Cal. Code

28  Regs., tit. 15, §§ 3084.1, 3048.2(a) (repealed June 1, 2020).

3

As the escort proceeded, plaintiff's movement became more difficult.  Plaintiff states that the way he had to walk made it appear that he was shuffling his feet or delaying the escort.  Once plaintiff came into view of the C-Facility Sallyport camera Fong pulled plaintiff's pants and boxers up.  Munoz, Fong, Calderon, Thompson, and Williamson pushed plaintiff to the ground for no reason.  (Id.)  Defendants punched, kicked, or kneed plaintiff.  (Id. at 4-5.)  Leavitt, Rose, and Cervantes were present during the escort while the other five officers used force against plaintiff.  (Id. at 5.)  Plaintiff states he complied with defendants' orders throughout the incident.

Plaintiff alleges defendants Rose, Munoz, Fong, Williamson, Calderon, Thompson, Cervantes, Fuller, and Leavitt filed false reports to further retaliate against him.

**MOTION FOR SUMMARY JUDGMENT**

**I.      Summary Judgment under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

1    trial." <u>Celotex</u>, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

2    of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.  In such

3    a circumstance, summary judgment should "be granted so long as whatever is before the district

4    court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

5    56(c), is satisfied." <u>Id.</u>

6        If the moving party meets its initial responsibility, the burden shifts to the opposing party

7    to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec.</u>

8    <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  In attempting to establish the

9    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

10   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

11   admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R.

12   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

13   fact "that might affect the outcome of the suit under the governing law," <u>Anderson v. Liberty</u>

14   <u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809

15   F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

16   reasonable jury could return a verdict for the nonmoving party," <u>Anderson</u>, 477 U.S. at 248.

17        "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

18   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>

19   <u>v. Cent. Costa Cnty. Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation

20   omitted).  It is the opposing party's obligation to produce a factual predicate from which the

21   inference may be drawn. <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir.

22   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23   show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586

24   (citations omitted).  "Where the record is taken as a whole could not lead a rational trier of fact to

25   find for the non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587 (quoting <u>First Nat'l</u>

26   <u>Bank</u>, 391 U.S. at 289).

27        On a motion for summary judgment, it is inappropriate for the court to weigh evidence or

28   resolve competing inferences.  "In ruling on a motion for summary judgment, the court must

1    leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

2    inferences from the facts' to the jury."  Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208,

3    210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

4              Generally, when a defendant moves for summary judgment on an affirmative defense on

5    which he bears the burden of proof at trial, he must come forward with evidence which would

6    entitle him to a directed verdict if the evidence went uncontroverted at trial.  See Houghton v.

7    South, 965 F.2d 1532, 1536 (9th Cir. 1992).  The failure to exhaust administrative remedies is an

8    affirmative defense that must be raised in a motion for summary judgment rather than a motion to

9    dismiss.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  On a motion for

10   summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there

11   was an available administrative remedy, and that the prisoner did not exhaust that available

12   remedy."  Id. at 1172.  If the defendant carries that burden, the "burden shifts to the prisoner to

13   come forward with evidence showing that there is something in his particular case that made the

14   existing and generally available administrative remedies effectively unavailable to him."  Id.  The

15   ultimate burden of proof remains with the defendant, however.  Id.  If material facts are disputed,

16   summary judgment should be denied, and the "judge rather than a jury should determine the

17   facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury

18   decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

19        **II.      Exhaustion**

20             **A.  Legal Standards or Exhaustion of Administrative Remedies**

21                  **1.  PLRA Exhaustion Requirement**

22             Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

23   are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA

24   mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 .

25   . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility

26   until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The

27   exhaust requirement "applies to all inmate suits about prison life, whether they involve general

28   ////

                                                     6

1    circumstances or particular episodes, and whether they allege excessive force or some other

2    wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

3        Regardless of the relief sought, a prisoner must purse an appeal through all levels of a

4    prison's grievance process as long as some remedy remains available.  "The obligation to exhaust

5    'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer

6    the case, then there are no 'remedies . . . available,' and the prison need not further pursue the

7    grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in

8    original) (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).

9        "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

10   administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust

11   unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (brackets in original).  In

12   discussing availability in Ross the Supreme Court identified three circumstances in which

13   administrative remedies were unavailable: (1) where an administrative remedy "operates as a

14   simple dead end" in which officers are "unable or consistently unwilling to provide any relief to

15   aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no

16   ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates

17   from taking advantage of a grievance process through machination, misrepresentation, or

18   intimidation." Id. at 1859-60.  "[A]side from [the unavailability] exception, the PLRA's text

19   suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special

20   circumstances.'" Id. at 1856.  "[M]andatory exhaustion statutes like the PLRA establish

21   mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

22        "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S.

23   199, 216 (2007).  It is the defendant's burden "to prove that there was an available administrative

24   remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th

25   Cir. 1996)).  The burden then "shifts to the prisoner to come forward with evidence showing that

26   there is something in his particular case that made the existing and generally available

27   administrative remedies unavailable to him." Id.

28   ////

A prisoner is required to exhaust administrative remedies before filing suit.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).  Section 1997e(a) mandates that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted.  42 U.S.C. § 1997e(a).  "The 'available' remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."  Booth, 532 U.S. at 738.  "Exhaustion subsequent to the filing of suit will not suffice."  McKinney, 311 F.3d at 1199.

### 2.  California's Inmate Appeal Process

"The California prison system's requirements 'define the boundaries of proper exhaustion."  Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S. at 218).  California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  During the time relevant to this action,[4] inmates in California proceeded through three levels of appeals to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id., § 3084.7(d)(3).  However, a cancellation or rejection decision does not exhaust administrative remedies.  Id., § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known

---

[4] In 2020, California changed the grievance system from a three-tier system to a two-tier system. The change became effective on June 1, 2020, after plaintiff initiated the relevant appeals in the present case.  See Cal. Code Regs. tit. 15, § 3480.  All citations to the California code in the text refer to the prior law.

1  and available to him/her regarding the issue being appealed at the time," and they must "describe

2  the specific issue under appeal and the relief requested."  Id. § 3084.6(b)(8).

3       An inmate has thirty calendar days to submit their grievance from the occurrence of the

4  event or decision being appealed, or "upon first having knowledge of the action or decision being

5  appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

6       **B.  Facts re Exhaustion**

7       CDCR has an administrative appeals process available to inmates.  (DSUF (ECF No. 118-

8  2) at ¶ 2.)  CDCR uses a computer system to log and track appeals through all levels of review.

9  (Id.)  The CSP-SAC Appeals Office tracks all inmate appeals, except those regarding medical

10  care, submitted for first and second-level review.  (DSUF (ECF No. 118-2) at ¶ 3.)  Appeals are

11  assigned a log number in the institution's computer system.  (Id.)

12       CDCR's Office of Appeals (OOA) handles tracking and review of appeals at the third

13  level of review.  (DSUF (ECF No. 118-2) at ¶ 4.)  An appeal is fully exhausted once the OOA

14  issues a decision.  (DSUF (ECF No. 118-2) at ¶ 5.)

15       Plaintiff filed an appeal related to the events giving rise to the claim.  (DSUF (ECF No.

16  118-2) at ¶ 6.)  Therein, plaintiff stated defendants Munoz and Fong refused to allow plaintiff to

17  pull up his pants as he was escorted across the yard on November 11, 2014.  (Id.)  He further

18  stated that he was slammed to the ground and subjected to excessive force by unidentified

19  officers.  (Id.)  That appeal was assigned log no. SAC-14-03344.  (Id.)

20       Appeal no. SAC-14-03344 was partially granted at the second level on January 13, 2015.

21  (DSUF (ECF No. 118-2) at ¶ 7.)  The decision advised plaintiff that issues unrelated to the

22  allegation of staff misconduct would not be addressed in any further response and must be

23  appealed separately.  (Id.)  It further informed plaintiff that the appeal would not exhaust

24  administrative remedies on any issue that was not presented or concerning any staff member not

25  identified in the appeal.  (Id.)

26       Plaintiff submitted appeal no. SAC-14-03344 for third level review.  (DSUF (ECF No.

27  118-2) at ¶ 8.)  He indicated that he was not satisfied with the second level decision because he

28  had been restrained by seven or eight officers and when they slammed him to the ground it

1    became gross misconduct.  (Id.)  He further stated he wanted defendants Thompson, Calderon,

2    Williamson, Cervantes, Fuller, and Leavitt added to his complaint.  (Id.)

3          Appeal no. SAC-14-03344 was initially rejected at the third level of review because it was

4    missing the CDCR Form 837 Crime/Incident Report, a necessary supporting document.  (DSUF

5    (ECF No. 118-2) at ¶ 9.)  Plaintiff resubmitted appeal no. SAC-14-03344 with the necessary

6    supporting documents.  (Id.)  It was denied at the third level of review on October 9, 2015.  (Id.)

7    Appeal no. SAC-14-03344 was the only appeal submitted for all three levels of review by

8    plaintiff concerning the events at issue in this case between the date of the incident, November

9    21, 2014, and April 26, 2016, when plaintiff filed the original complaint in this action.  (DSUF

10    (ECF No. 118-2) at ¶ 13.)  Plaintiff had not filed an appeal against any named defendant in this

11    action prior to November 21, 2014.  (DSUF (ECF No. 118-2) at ¶ 14.)

12                   **C.  Analysis of Exhaustion**

13          Defendants argue that the only appeal plaintiff filed related to the claims in this action was

14    appeal no. SAC-14-03344.  (ECF No. 118-1 at 17.)  The appeal discussed plaintiff's allegations

15    that defendants Munoz and Fong refused to allow plaintiff to pull up his pants while he was being

16    escorted across the prison yard and was slammed on the ground.  The appeal did not contain any

17    allegations regarding plaintiff's retaliation claim.  (Id.)  Defendants Calderon, Rose, Munoz,

18    Fong, Williamson, Fuller, Cervantes, and Thompson further argue that because plaintiff did not

19    file an appeal related to his retaliation claim, he did not put the prison on notice and the claim

20    should be dismissed without prejudice.  (Id.)  These same defendants also argue that plaintiff did

21    not exhaust any claim against defendants Rose, Calderon, Thompson, Fuller, or Cervantes.  (Id.)

22          Plaintiff argues that he was initially prevented from exhausting all claims in this action

23    because he was transferred to California Medical Facility (CMF) for mental health treatment and

24    while there he was not allowed writing utensils.  (ECF No. 135 at 32.)  Upon his return to CSP-

25    SAC he attempted to exhaust as to his retaliation and false disciplinary charges claims.  (Id. at

26    33.)  However, those appeals were screened out as duplicative.  He further states that he wrote a

27    letter to internal affairs regarding his retaliation claim.  (Id. at 34.)  The court will address each of

28    plaintiff's arguments in turn as set forth below.

1 **1. Failure to Name all Defendants or Allege Retaliation**

2       Defendants argue that plaintiff did not exhaust as to defendants Rose, Calderon,

3 Thompson, Fuller, and Cervantes because he did not identify them in the original version of

4 appeal no. SAC-14-03344.  (ECF No. 118 10-11, 16-18.)  Plaintiff acknowledges that he

5 identified all parties involved in section F of appeal no. SAC-14-03344.  (ECF No. 135 at 32.)

6 Section F of the inmate appeal form is the section dedicated to the prisoner's challenge to a

7 decision at the second level of review.  (See ECF No. 118-4 at 32.)  Plaintiff stated he would like

8 to have "Thompson, Calderon, Williamson, Cervantes, Fuller, Le[a]vitt . . ." added to the

9 complaint.  (Id. at 34.)

10       Failing to name individual defendants, even when defendants are added at the second or

11 third level of review, is not sufficient to exhaust as to the later added defendants.  See Ethridge v.

12 Rodriguez, No. 1:12-cv-2088 AWI SAB PC, 2015 WL 13237012, at *7 (E.D. Cal. Nov. 13,

13 2015) ("Administrative remedies are not exhausted as to any new issue, information or person

14 later named by the appellant prisoner that was not included in the originally submitted CDCR

15 Form 602 and addressed through all required levels of administrative review up to and including

16 the third level."); Smith v. Mendoza, No. 19-03750 BLF (PR), 2021 WL 930706, at **9-10 (N.D.

17 Cal. Mar. 10, 2021) (original grievance identified one defendant and alleged that defendant took

18 retaliatory action against him due to a mail-related dispute did not exhaust claim as to other

19 defendants identified in information provided at the second level of review).  Even though

20 plaintiff included defendants Thompson, Calderon, Williamson,[5] Cervantes, and Fuller in his

21 response to the second level review decision (ECF No. 118-4 at 34), he has failed to exhaust as to

22 these defendants because they were not mentioned in the original grievance.

23       Plaintiff also failed to include any facts relating to his retaliation claim in appeal no. SAC-

24 14-03344.  Because this appeal does not contain allegations putting CSP-SAC on notice of his

25 retaliation claim it does not exhaust his retaliation claims.  Morton v. Hall, 599 F.3d 942, 946 (9th

26 Cir. 2010) (finding grievance that complained of visitation restrictions and did not mention an

27

28     [5] Although plaintiff requested that Williamson be added in his response to the second level
review, Williamson was identified in plaintiff's original appeal.  (See ECF No. 118-4 at 33.)

1    assault or that the visitation restriction was related to the assault was insufficient to put prison

2    officials on notice that staff conduct contributed to the assault.).  Additionally, the second level

3    response to appeal no. SAC-14-03344 advised plaintiff that he had not exhausted administrative

4    remedies as to any unrelated issue not covered in the response or concerning any staff member

5    not identified in the complaint.  (ECF No. 135 at 85.)

6         Appeal no. SAC-14-03344 fails to exhaust plaintiff's retaliation claim and his claims

7    against defendants Calderon, Rose, Fuller, Cervantes, and Thompson.

8                           **2.  Unavailability**

9         Plaintiff argues that administrative remedies were unavailable to him because he was

10   transferred to CMF while his appeal was pending.  (ECF No. 135 at 32.)  However, plaintiffs are

11   not excused from exhausting based on their transfer to a different prison facility.  See Beckwith v.

12   McCullough, No. EDCV 16-662 MWF (MRW), 2017 WL 1377732 at *3 (C.D. Cal. Feb. 6,

13   2017) (plaintiff not excused from exhaustion based on his transfer to another prison facility);

14   Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002) ("The fact that Medina-

15   Claudio happened to be a prisoner in various locations, and under the custody of different

16   officials, does not affect his obligation to exhaust his administrative remedies before filing suit");

17   Howard v. Baca, No. CV 10-5081-JFW (OP), 2011 WL 5570086 at *5 (C.D. Cal. Sept. 27, 2011)

18   (same); Flournoy v. Navarro, No. CV 05-7708 PA (FFM), 2008 WL 4184650 at *7 (C.D. Cal.

19   Sept. 10, 2008) (same).

20        It is undisputed that plaintiff was able to exhaust appeal no. SAC-14-03344 even though

21   he was transferred and initially failed to attach necessary supporting documents.  (DSUF (ECF

22   No. 118-2) at ¶ 10; ECF No. 135 at 57-58.)  Plaintiff was allowed to resubmit this appeal with the

23   necessary supporting documents and it was accepted for third level review.  Accordingly, plaintiff

24   has failed to show that administrative remedies were unavailable due to his transfer to CMF.

25                         **3.  Cancelled Grievance**

26        Plaintiff argues he filed two appeals, SAC-15-2177 and SAC-P-15-2356, one related to

27   his retaliation claim and the other appealing his guilty finding at his disciplinary hearing.  (ECF

28   No. 135 at 34.)  Both appeals were cancelled as duplicative.  (Id. at 34.)  It appears grievance no.

1    SAC-15-00355 was cancelled for failure to attach necessary supporting documents.  (Id. at 33.)

2    Plaintiff acknowledges that appeals SAC-15-0355, SAC-15-02177, and SAC-P-15-2356 were

3    cancelled.  (ECF No. 135 at 33-34.)  A cancelled grievance does not exhaust because plaintiff

4    could have sought additional review of the rejection decision.  See Ranson v. Aquirre, No. 1:12-

5    cv-1343 AWI DLB (PC), 2013 WL 5923104, at *7 (E.D. Cal. Nov. 1, 2013) (a cancelled

6    grievance does not exhaust administrative remedies because a separate appeal could have been

7    filed on the cancellation decision).

8           Because plaintiff could have sought additional review, and did not, he has failed to show

9    that administrative remedies were unavailable to him.  Accordingly, the court finds that plaintiff

10   has not exhausted his claims against defendants Calderon, Rose, Fuller, Cervantes, and

11   Thompson.  Additionally, he has not exhausted his retaliation or failure to protect claims.[6]

12          **III.    Heck Bar**

13                 **A.  Legal Standards**

14          The United States Supreme Court held in Heck v. Humphrey, 512 U.S. 477 (1994) that a

15   plaintiff may not prevail on a § 1983 claim if doing so "would necessarily imply the invalidity" of

16   plaintiff's conviction arising out of the same underlying facts as those at issue in the civil action

17   "unless the plaintiff can demonstrate that the conviction or sentence has already been

18   invalidated."  Id. at 487.  Thus, "Heck says that 'if a criminal conviction arising out of the same

19   facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983

20   damages are sought, the 1983 action must be dismissed.'"  Smith v. City of Hemet, 394 F.3d 689,

21   695 (9th Cir. 2005) (quoting Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)).

22   "Consequently, 'the relevant question is whether success in a subsequent § 1983 suit would

23   'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence....'  Beets

24   v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012) (quoting Smithart, 79 F.3d at

25   _____

26   [6] The court need not analyze the merits of unexhausted claims.  Haney v. Sullivan, No. 17-CV-
     3808 LHK (PR), 2019 WL 1024409, at *8 (N.D. Cal. Mar. 4, 2019).  Because the court finds that
27   plaintiff failed to exhaust his retaliation claim, the court need not address the merits of this claim.
     Additionally, plaintiff failed to exhaust as to those defendants he alleges failed to protect him.
28   Accordingly, the court need not analyze the merits of plaintiff's failure to protect claim.

13

951).  It is the defendant's burden to show that a plaintiff's claim is barred by <u>Heck</u>.  <u>See</u> <u>Sanford</u> <u>v. Motts</u>, 258 F.3d 1117, 1119 (9th Cir. 2001).

### B.  Facts re Heck Bar

Plaintiff was found guilty of a rules violation report (RVR) for battery on a peace officer following the November 21, 2014, incident.  (DSUF (ECF No. 118-2) at ¶ 31.)

### C.  Analysis of Heck Bar

Defendants argue that plaintiff's claims are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) because judgment in plaintiff's favor would necessarily imply the invalidity of the rules violation report conviction and corresponding 121 days of good credit loss for the battery on defendant Munoz.  (ECF No. 118-1 at 25.)

The Supreme Court held in <u>Heck</u> "that an inmate may not seek damages in a § 1983 claim when establishing the basis for the claim necessarily involves demonstrating that the conviction, sentence, or length of incarceration is invalid."  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 840 (9th Cir. 2014) (citing <u>Heck</u>, 512 U.S. at 480-82).  However, the Court later "clarified that Heck does not bar a § 1983 claim that 'threatens no consequence for [an inmate's] conviction or the duration of [his or her sentence.]"  <u>Wilkerson</u>, 772 F.3d at 840 (quoting <u>Muhammad v. Close</u>, 540 U.S. 749, 751 (2004)).

None of the parties have put forth evidence indicating whether plaintiff has a determinate or indeterminate sentence.  However, it appears that plaintiff was sentenced to 101 years, four months to life in prison.  <u>See</u> <u>People v. Harris</u>, No. D048455, 2007 WL 1969781, at *1 (Cal. Ct. App. July 9, 2007).[7]  Because it appears that plaintiff's sentence is indeterminate, his claim is not <u>Heck</u> barred.  <u>See</u> <u>Wilkerson</u>, 772 F.3d at 840 (<u>Heck</u> does not bar a § 1983 claim that will have no impact on a prisoner's conviction or the duration of his or her sentence).

////

---

[7] The court may take judicial notice of documents filed in other courts.  <u>Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank</u>, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case); <u>Harris v. County of Orange</u>, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

14

Additionally, the undersigned also declines to find that the determination that plaintiff was guilty of battery on a peace officer is inconsistent with plaintiff's allegation that officers used excessive force.  It is possible that officers used excessive force before the actions that resulted in the guilty finding or that officers used excessive force in response to plaintiff's actions.  See Stevenson v. Holland, No. 1:16-cv-1831 AWI JLT, 2020 WL 264422, at *15 (E.D. Cal. Jan. 17, 2020) (Plaintiff was found guilty of "Battery on a Peace Officer with Serious Injury" but court declined to find that plaintiff's excessive force claim was Heck barred because "even if Plaintiff battered [defendant] by shouldering and kicking him and fractured [defendant's] hand, Plaintiff can advance the cognizable legal theory that the force applied by the prison officers in response was excessive and unnecessary and applied maliciously and sadistically for the purpose of causing harm to Plaintiff."); Puckett v. Zamora, No. 1:12-cv-0948 DLB PC, 2015 WL 757330, at *4 (E.D. Cal. Feb. 23, 2015) (Plaintiff was found guilty of a rules violation report and court found that plaintiff's excessive force claims were not Heck barred "because the guilty finding concerned only the initial takedown and the necessity of the force used by [the defendant] in responding to Plaintiff's provocation."); Stalling v. Stinson, No. 2:20-cv-1180 JAM JDP (PC), 2021 WL 3630470, at *3 (E.D. Cal. Aug. 17, 2021) (declining to find plaintiff's excessive force claim was Heck barred because the court found the RVR guilty finding was not inconsistent with the allegations in plaintiff's complaint).

Thus, the undersigned declines to find that plaintiff's claims are barred by Heck.

**IV.     Eighth Amendment**

      **A.  Legal Standards re Excessive Force**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

15

1    The use of force is constitutional if used to keep or restore order in the prison; it is

2    unconstitutional if used maliciously or sadistically for the very purpose of causing harm.  Id. at

3    320-21 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  However, not "every

4    malevolent touch by a prison guard gives rise to a federal cause of action."  Hudson v. McMillian,

5    501 U.S. 1, 9 (1992).  The Eighth Amendment's prohibition of 'cruel and unusual' punishments

6    necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided

7    that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Id., at 9-10.

8    The Supreme Court has identified five factors to consider in determining whether an

9    official's use of force was for the purpose of maintaining and restoring discipline, or for the

10   malicious and sadistic purpose of causing harm: (1) extent of the injury; (2) need to use the force;

11   (3) relationship between the need to use the force and the amount used; (4) the threat "reasonably

12   perceived" by the official; and (5) any efforts made to temper the severity of the force.  Id. at 7;

13   see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in

14   proportion to the need in each situation).  "The absence of serious injury is . . . relevant to the

15   Eighth Amendment inquiry, but does not end it."  Id.

16   Among unnecessary and wanton inflictions of pain are those that are totally without

17   penological justification, Hope v. Pelzer, 536 U.S. 730, 737 (2002) (citing Rhodes v. Chapman,

18   452 U.S. 337, 346 (1981)) (quotation marks omitted), and punitive treatment which amounts to

19   gratuitous infliction of wanton and unnecessary pain is prohibited by the Eighth Amendment, Id.

20   at 738 (quotation marks omitted).  Furthermore, "prison administrators . . . should be accorded

21   wide-ranging deference in the adoption and execution of policies and practices that in their

22   judgment are needed to preserve internal order and discipline and to maintain institutional

23   security."  Hudson, 503 U.S. at 6 (ellipsis in original) (citation omitted).

### B.  Facts re Excessive Force

25   On November 21, 2014, as plaintiff was preparing to go out to the prison yard, he gave his

26   clothes to Munoz and Fong to be searched.  (ECF No. 118 at 9.)  As plaintiff was getting dressed,

27   Munoz told plaintiff to pull up his boxers and also made a "rude comment."  (ECF No. 118 at 9.)

28   Plaintiff responded with "foul language."  (ECF No. 118 at 9.)  Munoz ordered plaintiff to turn

16

1    around and put his hands behind his back so that he could be handcuffed.  Plaintiff complied.

2    Munoz and Fong began escorting plaintiff across the yard shirtless and without his cane.  (ECF

3    No. 118 at 9.)  As they walked, plaintiff's pants and boxers began to fall down.

4         At some point during the escort, Williamson, Calderon, Thompson, Fuller, Rose, and

5    Leavitt joined the escort.  Plaintiff requested that the officers pull up his pants and boxers.  He

6    also asked the officers to slow down because he was having trouble walking without his cane.

7                        **1.  Defendants' Version**

8         Defendants state that plaintiff was verbally abusive, twisted his body toward Munoz,

9    attempted to head-butt Munoz, and struck Munoz with his left elbow during the escort.  (DSUF

10   (ECF No. 118-2) at ¶ 24.)  After this occurred, defendants used their "physical body strength to

11   force plaintiff to the ground and hold him there until he could be placed in restraints."  (DSUF

12   (ECF No. 118-2) at ¶ 25.)  Defendants deny that they slammed plaintiff to the ground or punched

13   and kicked him while he was on the ground.  (DSUF (ECF No. 118-2) at ¶ 26.)

14                        **2.  Plaintiff's Version**

15        Plaintiff alleges he complied with officers when they searched his clothing and after they

16   ordered him to put his hands behind his back so that he could be handcuffed.  (ECF No. 135 at

17   43.)  As he was escorted across the yard his pants and boxers began to fall down exposing his

18   buttocks and genitals.  (Id. at 44.)  Defendant Fong pulled up his pants once they were in view of

19   the camera.  (Id. at 44.)  Defendants slammed plaintiff onto the ground unprovoked.  Plaintiff

20   denies assaulting or attempting to assault Munoz.  (Id. at 44.)

21        While plaintiff was restrained on the ground, defendants punched and or kicked plaintiff.

22   (Id. at 45.)  Defendants also raised plaintiff's arms behind his back in an attempt to dislocate his

23   shoulders.  (Id.)

24        Plaintiff has provided a declaration from fellow inmate Jaquan Jones.  (ECF No. 135 at

25   194-95.)  Jones states that he observed five or six officers escorting plaintiff across the yard and it

26   looked as though plaintiff was having trouble walking.  (ECF No. 135 at 194.)  He also observed

27   officers Munoz, Calderon, Williamson, Leavitt, and Fong push plaintiff onto the concrete.  (Id.)

28   He did not see plaintiff resist or be combative with officers at any time.  He states that after

                                            17

1  plaintiff was on the ground two other unnamed officers got on top of plaintiff and began punching

2  him.  (Id. at 195.)  Calderon kicked plaintiff in his side.

3       Plaintiff has also provided a declaration from fellow inmate Jayshaun Priece.  (ECF No.

4  135 at 198-200.)  The inmate states that he witnessed the November 21, 2014, incident.  He

5  further states that "three or four officers unprovoked slam [plaintiff] face first [sic] onto the

6  concrete" and while he was on the ground "other officers kicked and punched [plaintiff] while

7  one officer stood on top of [plaintiff's] leg to apply body weight" onto him.  (Id. at 199.)

8                     **C.  Analysis of Excessive Force[8]**

9       Plaintiff's excessive force case cannot be resolved on summary judgment.  Considering

10  the facts in the light most favorable to plaintiff, there are material issues of fact relevant regarding

11  what happened during the escort across the yard, what happened when defendants took plaintiff to

12  the ground, and whether more force than necessary was used once he was on the ground.

13       Defendants lodged a video showing a portion of the November 21, 2014, incident.  (ECF

14  No. 118-16.)  The undersigned has reviewed the video provided by defendants.  The footage

15  shows a group of officers escorting plaintiff across the yard and the officers taking plaintiff onto

16  the ground.  However, the footage is not clear enough to conclusively support either parties'

17  version of events.  A reasonable juror could view the footage as supporting the officers' account

18  that they forced plaintiff onto the ground because he was resisting.  Alternatively, a reasonable

19  juror could view the footage as supporting plaintiff's contention that he was slammed to the

20  ground without provocation.

21       Additionally, it is impossible to tell whether officers punched or kicked plaintiff while he

22  was on the ground because of the low quality of the video footage.  Because the footage could

23  reasonably be viewed in different ways, summary judgment is not appropriate.  See Glenn v.

24  Washington Cnty., 673 F.3d 864, 878 (9th Cir. 2011) ("We recognize that the officers have

---

25  [8] Defendants argued for the first time in their reply brief that the first part of plaintiff's claim,
26  involving plaintiff's allegation that he was escorted across the prison yard with his buttocks and
   genitals exposed does not violate the Eighth Amendment as a matter of law.  (ECF No. 139 at 5.)
27  However, the "court need not consider arguments raised for the first time in a reply brief."
   Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (citing Navarro v. Block, 250 F.3d 729, 732
28  (9th Cir. 2001)).

1    offered evidence that could support a verdict in their favor. A jury could view the facts as the

2    district court did, and likewise reach the conclusion that the officers' use of force was reasonable.

3    But on summary judgment, the district court is not permitted to act as a factfinder.  The

4    circumstances of this case can be viewed in various ways, and a jury should have the opportunity

5    to assess the reasonableness of the force used after hearing all the evidence."); see also Smith v.

6    City of Hemet, 394 F.3d 689, 700-01 (9th Cir. 2005) ("Because the excessive force inquiry nearly

7    always requires a jury to sift through disputed factual contentions, and to draw inferences

8    therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly.")

9         Because disputed issues of fact remain regarding whether defendants use of force was

10   reasonable under the circumstances, summary judgment is inappropriate.  Accordingly, this court

11   will recommend that summary judgment be denied on plaintiff's excessive force claim.

12                                  **CONCLUSION**

13        For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants'

14   motion for summary judgment (ECF No. 118) be granted in part and denied in part as follows:

15        1.  Summary judgment be granted based on failure to exhaust administrative remedies as

16   to defendants Calderon, Rose, Fuller, Cervantes, and Thompson and these defendants be

17   dismissed without prejudice;

18        2.  Summary judgment be granted based on failure to exhaust administrative remedies as

19   to plaintiff's retaliation claim and this claim be dismissed without prejudice; and

20        3.  Summary judgment be denied on plaintiff's excessive force claim against defendants

21   Munoz, Fong, and Williamson.

22        These findings and recommendations are submitted to the United States District Judge

23   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

24   after being served with these findings and recommendations, any party may file written

25   objections with the court and serve a copy on all parties.  Such a document should be captioned

26   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

27   shall be served and filed within fourteen days after service of the objections.  The parties are

28   ////

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 7, 2022

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:12
DB/DB Prisoner Inbox/Civil Rights/S/harr0830.msj Ds fr

20