UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRADY HARRIS, | No. 2:16-cv-0830 TLN DB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| JEFF MACOMBER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action seeking relief under 42 U.S.C. § 1983. Plaintiff claims that defendants used excessive force, failed to protect him, and retaliated against him in violation of his constitutional rights. Presently before the court is defendant's motion for an extension of time and his fully briefed motion[1] for summary judgment. For the reasons set forth below, the court will grant the motion for an extension of time and recommend that the motion be granted in part and denied in part as set forth below.

////

---

[1] Defendants Calderon, Rose, Munoz, Fong, Williamson, Fuller, Cervantes, and Thompson are represented by the Office of the Attorney General. Defendant Leavitt is separately represented and filed a separate motion for summary judgment. The undersigned will separately address the motion for summary judgment filed on behalf of defendants Calderon, Rose, Munoz, Fong, Williamson, Fuller, Cervantes, and Thompson.

1

**MOTION FOR EXTENSION OF TIME**

Defendant Leavitt filed a motion seeking an extension of time to file a motion for summary judgment. (ECF No. 120.) Therein, counsel for defendant requested an additional 10 days to file a motion for summary judgment because he had to leave town to assist family members. (ECF No. 120-1.) Good cause appearing the court will grant the motion for an extension of time.

**BACKGROUND**

**I.     Relevant Procedural History**

From, May 25, 2016, to July 8, 2021, this action was proceeding on plaintiff's First Amended Complaint (FAC). The undersigned determined that the FAC stated potentially cognizable claims against defendants Rose, Munoz, Fong, Williamson, Calderon, Thompson, Cervantes, Fuller, and Leavitt. (ECF No. 15.) Following service, defendants Calderon, Cervantes, Fong, Fuller, Munoz, Rose, Thompson, and Williamson filed an answer (ECF No. 25) and the parties engaged in discovery. Defendant Leavitt moved to dismiss (ECF No. 34) the complaint arguing that the FAC fails to allege he used force against plaintiff. (ECF No. 34-1 at 4.)

By order dated June 8, 2020, the District Judge assigned to this action granted in part and denied in part defendant Leavitt's motion to dismiss. (ECF No. 86.) Plaintiff was given leave to file an amended complaint. Amendment was limited to plaintiff's First and Eighth Amendment claims against defendant Leavitt. (Id. at 13.) Plaintiff did not file an amended complaint within thirty days. Defendant Leavitt moved for dismissal based on plaintiff's failure to file an amended complaint. (ECF No. 90.) Thereafter, plaintiff filed the Second Amended Complaint (SAC). (ECF No. 96.)

The undersigned recommended that defendant Leavitt's second motion to dismiss be denied as moot. (ECF No. 100.) In plaintiff's objections to those findings and recommendations plaintiff stated that his SAC was not timely filed because the prison failed to forward the SAC to the court. (ECF No. 102 at 2.) When he realized, he resubmitted the SAC. (Id.) By order dated
////

2

May 3, 2021, the district court adopted the findings and recommendations denying Leavitt's motion to dismiss. (ECF No 105.)

Following the adoption of the findings and recommendations, the undersigned screened the SAC and reopened discovery for the limited purpose of allowing the parties to conduct discovery as to defendant Leavitt. (ECF No. 106.) Following the close of discovery defendants Calderon, Rose, Munoz, Fong, Williamson, Fuller, Cervantes, and Thompson and defendant Leavitt filed separate motions for summary judgment. (ECF Nos. 118, 121.) Plaintiff filed an opposition responding to both motions for summary judgment. (ECF No. 135.) Defendants filed separate replies to plaintiff's opposition. (ECF Nos. 137, 139.)

## II. Allegations in the Second Amended Complaint

Plaintiff alleges the events giving rise to the claim occurred while he was incarcerated at California State Prison, Sacramento (CSP-SAC). (ECF No. 96 at 1.) Plaintiff states that on November 21, 2014, he was preparing to go to the yard when an officer told him to pull up his boxers. (Id. at 3.) The officer also made an inappropriate comment about the size of plaintiff's buttocks in front of other inmates and staff. Plaintiff complied with officer's orders and handed over his clothes and cane to Munoz and Fong so that he could be searched. While getting dressed Munoz told plaintiff to pull up his boxers followed by another rude comment. Plaintiff responded using "foul language."

Munoz ordered plaintiff to turn around to be handcuffed and plaintiff complied. Munoz and Fong began escorting plaintiff on the yard shirtless, hands cuffed behind him, and without his cane. Plaintiff asked for his cane as his pants and boxers began to fall down below his thighs. Williamson, Calderon, Thompson, Fuller, Rose, Leavitt, and Valasquez joined the escort. Plaintiff asked if the defendants could pull up his pants and boxers. Plaintiff also asked if officers could slow down the escort because he was having difficulty walking without his cane, with his hands behind his back, and with his pants below his knees. (Id. at 3-4.) Leavitt and the other officers and inmates on the yard laughed as plaintiff's genitals and buttocks were exposed. (Id. at 4.)

////

3

Near the gym, Munoz responded to plaintiff's request to slow down and pull up his pants by stating, "So what! You should have thought about that before you started filing 602's[2] against people for falling down the stairs and running your mouth."

As the escort proceeded, plaintiff's movement became more difficult. Plaintiff states that the way he had to walk made it appear that he was shuffling his feet or delaying the escort. Once plaintiff came into view of the C-Facility Sallyport camera Fong pulled plaintiff's pants and boxers up. Munoz, Fong, Calderon, Thompson, and Williamson pushed plaintiff to the ground for no reason. (Id.) Defendants punched, kicked, or kneed plaintiff. (Id. at 4-5.) Leavitt, Rose, and Cervantes were present during the escort while the other five officers used force against plaintiff. (Id. at 5.) Plaintiff states he complied with defendants' orders throughout the incident.

Plaintiff alleges defendants Rose, Munoz, Fong, Williamson, Calderon, Thompson, Cervantes, Fuller, and Leavitt filed false reports to further retaliate against him.

## MOTION FOR SUMMARY JUDGMENT

### I.     Summary Judgment under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

---

[2] At the relevant time, the California Department of Corrections and Rehabilitation's administrative grievance process was initiated by submission of a CDC Form 602. Cal. Code Regs., tit. 15, §§ 3084.1, 3048.2(a) (repealed June 1, 2020).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

**II.    Heck Bar**

**A. Legal Standards**

The United States Supreme Court held in Heck v. Humphrey, 512 U.S. 477 (1994) that a plaintiff may not prevail on a § 1983 claim if doing so "would necessarily imply the invalidity" of

6

plaintiff's conviction arising out of the same underlying facts as those at issue in the civil action "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. Thus, "Heck says that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (quoting Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)). "Consequently, 'the relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence....'" Beets v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012) (quoting Smithart, 79 F.3d at 951). It is the defendant's burden to show that a plaintiff's claim is barred by Heck. See Sanford v. Motts, 258 F.3d 1117, 1119 (9th Cir. 2001).

### B. Facts re Heck Bar

Plaintiff was found guilty of a rules violation report (RVR) for battery on a peace officer. (DSUF (ECF No. 121-2) at ¶ 10.)

### C. Analysis of Heck Bar

Leavitt argues that plaintiff's claim that officers used excessive force or wrote false reports of the incident is barred by Heck. (ECF No. 121 at 6-7.)

The Supreme Court held in Heck "that an inmate may not seek damages in a § 1983 claim when establishing the basis for the claim necessarily involves demonstrating that the conviction, sentence, or length of incarceration is invalid." Wilkerson v. Wheeler, 772 F.3d 834, 840 (9th Cir. 2014) (citing Heck, 512 U.S. at 480-82). However, the Court later "clarified that Heck does not bar a § 1983 claim that 'threatens no consequence for [an inmate's] conviction or the duration of [his or her sentence.]" Wilkerson, 772 F.3d at 840 (quoting Muhammad v. Close, 540 U.S. 749, 751 (2004)).

Neither party has put forth evidence indicating whether plaintiff has a determinate or indeterminate sentence. However, it appears[3] that plaintiff was sentenced to 101 years, four

---

[3] The court may take judicial notice of documents filed in other courts. Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial

7


months to life in prison. See People v. Harris, No. D048455, 2007 WL 1969781, at *1 (Cal. Ct. App. July 9, 2007). Because it appears that plaintiff's sentence is indeterminate, his claim is not Heck barred. See Wilkerson v. Dodson, 772 F.3d at 840 (Heck does not bar a § 1983 claim that will have no impact on a prisoner's conviction or the duration of his or her sentence).

Additionally, the undersigned also declines to find that the determination that plaintiff was guilty of battery on a peace officer is inconsistent with plaintiff's allegation that officers used excessive force. It is possible that officers used excessive force before the actions that resulted in the guilty finding or that officers used excessive force in response to plaintiff's actions. See Stevenson v. Holland, No. 1:16-cv-1831 AWI JLT, 2020 WL 264422, at *15 (E.D. Cal. Jan. 17, 2020) (Plaintiff was found guilty of "Battery on a Peace Officer with Serious Injury" but court declined to find that plaintiff's excessive force claim was Heck barred because "even if Plaintiff battered [defendant] by shouldering and kicking him and fractured [defendant's] hand, Plaintiff can advance the cognizable legal theory that the force applied by the prison officers in response was excessive and unnecessary and applied maliciously and sadistically for the purpose of causing harm to Plaintiff."); Puckett v. Zamora, No. 1:12-cv-0948 DLB PC, 2015 WL 757330, at *4 (E.D. Cal. Feb. 23, 2015) (Plaintiff was found guilty of a rules violation report and court found that plaintiff's excessive force claims were not Heck barred "because the guilty finding concerned only the initial takedown and the necessity of the force used by [the defendant] in responding to Plaintiff's provocation."); Stalling v. Stinson, No. 2:20-cv-1180 JAM JDP (PC), 2021 WL 3630470, at *3 (E.D. Cal. Aug. 17, 2021) (declining to find plaintiff's excessive force claim was Heck barred because the court found the RVR guilty finding was not inconsistent with the allegations in plaintiff's complaint). Thus, the undersigned declines to find that plaintiff's claims are barred by Heck.

////

////

---

notice of court filings in a state court case); Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

8

### III. Eighth Amendment

#### A. Legal Standards re Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

The use of force is constitutional if used to keep or restore order in the prison; it is unconstitutional if used maliciously or sadistically for the very purpose of causing harm. Id. at 320-21 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 501 U.S. 1, 9 (1992). The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id., at 9-10.

The Supreme Court has identified five factors to consider in determining whether an official's use of force was for the purpose of maintaining and restoring discipline, or for the malicious and sadistic purpose of causing harm: (1) extent of the injury; (2) need to use the force; (3) relationship between the need to use the force and the amount used; (4) the threat "reasonably perceived" by the official; and (5) any efforts made to temper the severity of the force. Id. at 7; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to the need in each situation). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Among unnecessary and wanton inflictions of pain are those that are totally without penological justification, Hope v. Pelzer, 536 U.S. 730, 737 (2002) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (quotation marks omitted), and punitive treatment which amounts to gratuitous infliction of wanton and unnecessary pain is prohibited by the Eighth Amendment, Id.

at 738 (quotation marks omitted).  Furthermore, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Hudson, 503 U.S. at 6 (ellipsis in original) (citation omitted).

### B.  Legal Standards re Failure to Protect

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners."  Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) and Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)).  To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate."  Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety."  Farmer, 511 U.S. at 837.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id. at 842 (citations omitted).  The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner.  Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind."  Wilson, 501 U.S. at 297 (internal quotations marks, emphasis, and citations omitted).

### C.  Facts re Excessive Force and Failure to Protect

On November 21, 2014, as plaintiff was preparing to go out to the prison yard an officer told him to pull up his boxers.  (ECF No. 135 at 10.)  The officer then made a "rude comment" about the size of plaintiff's buttocks in the presence of staff and other inmates.  Plaintiff responded with "foul language."  (Id.)  Munoz ordered plaintiff to turn around and put his hands

10

1 behind his back so that he could be handcuffed. Plaintiff complied. Munoz and Fong began
2 escorting plaintiff across the yard shirtless and without his cane. As they walked, plaintiff's pants
3 and boxers began to fall down. (Id.)
4     At some point during the escort, Williamson, Calderon, Thompson, Fuller, Rose, and
5 Leavitt joined the escort. (Id. at 10-11.) Plaintiff requested that the officers pull up his pants and
6 boxers. (Id. at 11.) He also asked the officers to slow down because he was having trouble
7 walking without his cane.

### 1. Defendant's Version

9     Leavitt states that he did not use any force against plaintiff during the incident. (DSUF
10 (ECF No. 121-2) at ¶ 2.) Leavitt further states that he did not witness plaintiff assault any officers
11 during the incident because by the time he arrived on the scene plaintiff was already on the
12 ground being restrained by other officers. (DSUF (ECF No. 121-2) at ¶ 6, 7.)

### 2. Plaintiff's Version

14     Plaintiff states that he did not "see Leavitt in action," but "he did feel the pain from the
15 kicks as he watched Leavitt step away" from him while he was on the ground. (ECF No. 135 at
16 15.) Additionally, plaintiff has provided two declarations from fellow inmates who observed the
17 November 21, 2014, incident. (Id. at 194-200.) Inmate Jones' declaration states that he observed
18 Leavitt, along with four other officers, push plaintiff onto the concrete. (Id. at 194.) He further
19 avers that plaintiff was not resisting. (Id.)

### D. Analysis of Excessive Force and Failure to Protect

#### 1. Excessive Force

22 Defendant argues that plaintiff cannot establish that he used force against plaintiff because
23 he acknowledged during the deposition that he did not see defendant use any force against him.
24 (ECF No. 121 at 4.) Because actual use of force is an essential element of the claim, defendant
25 argues that he is entitled to summary judgment. Plaintiff stated during the deposition that Leavitt
26 was not involved in slamming him to the ground. (ECF No. 121-3 at 7-8.) However, plaintiff has
27 maintained that even though he could not see defendant strike him he noticed he was close at the
28 same time he felt pain from being struck. (ECF No. 135 at 15.)

11

There is conflicting testimony regarding whether defendant used excessive force. Because the parties have presented different versions of what happened, summary judgment is inappropriate. Defendant is not entitled to summary judgment because plaintiff could not see defendant strike him. Loharsingh v. City and Cnty. of San Francisco, 696 F.Supp.2d 1080, 1004 (N.D. Cal. 2010) (summary judgment not appropriate even though plaintiff could not "attribute specific blows to each officer" because he presented "sufficient evidence to create a genuine issue of material fact" as to whether defendant officer used excessive force); Fisher v. City of Pittsburg, No. C 05-2774 CW (PR), 2008 WL 4369986, at *6 (N.D. Cal. Sept. 24, 2008) (defendant not entitled to summary judgment on excessive force claim even though plaintiff could not attribute specific blows to each officer because he was struck from different angles and lost consciousness during the beating).

### 2. Failure to Protect

Defendant argues that he is entitled to summary judgment on plaintiff's failure to protect claim because from where he was positioned during the incident, he could not see what methods were being used to restrain plaintiff. (ECF No. 121 at 4.) He again argues that plaintiff testified during the deposition that he could not see defendant during the incident. (Id.) Defendant alleges that he "did not participate in any actions to seize or restrain plaintiff, and is unaware of what force was utilized." (ECF No. 121 at 5.) In the reply, defendant further argues that because plaintiff stated during the deposition, that he was on the ground and could not see what was happening he is not in a position to contradict defendant's version of events. (ECF No. 137 at 3.)

Even though plaintiff states that he was on the ground and could not see Leavitt strike him, he has maintained that Leavitt was standing in the area while officers punched and kicked him. (ECF No. 135 at 17.) Standing nearby while other officers struck plaintiff would tend to support an inference that defendant failed to protect plaintiff. A reasonable juror could credit plaintiff's version of events. Accordingly, the court finds that disputed issues of material fact preclude summary judgment on plaintiff's failure to protect claim.

////

////

## IV. Retaliation

### A. Legal Standards

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

### B. Facts re Retaliation

Plaintiff alleges that during the escort, Munoz told plaintiff he was being "mistreated" and "humiliated" because he had filed a grievance related to a fall down some stairs. (ECF No. 135 at 22.) He claims the defendants, including defendant Leavitt, laughed "in agreement" at Munoz's comment. (Id.)

Defendant's declaration states that he was not aware that plaintiff made prior complaints and even if he had been aware his incident report was an accurate reflection of what he observed. (ECF No. 121-4 at 2.)

### C. Analysis of Retaliation Claim

The court finds that plaintiff's speculation that defendant laughed in agreement when Munoz indicated that plaintiff was being adversely treated because he had filed a grievance, is not sufficient to create an issue of material fact. Such speculation regarding defendant's motivation for his actions is insufficient to show that summary judgment should be denied.

In order to show that defendant's adverse action was "because of" plaintiff's protected conduct, plaintiff must first show that defendant was aware of plaintiff's protected conduct. Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009). However, plaintiff's speculation that defendant must have known about the grievance is not sufficient to create a material issue of fact sufficient to deny the motion for summary judgment. See Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."); Nelson v. Pima Cmty. College, 83 F.3d 1075, 1081-82 (1996)

(citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). The parties agree that they had no interaction prior to the November 21, 2014, incident. Speculation that defendant "laughed in agreement" is not sufficient to show that plaintiff's prior grievance was the motivating factor behind any adverse action. See Halloum v. Ryan, No. CV 11—0097 PHX RCB, 2014 WL 1047144 at *7 (D. Ariz. Mar. 18, 2014) (granting summary judgment where plaintiff submitted no probative evidence that defendant was aware of plaintiff's protected conduct).

Additionally, plaintiff's grievance (ECF No. 118-4 at 33) and one of the declarations (ECF No. 135 at 199) provided by plaintiff in support of his opposition indicate that officers refused to slow down the escort because of the exchange plaintiff had with defendants Munoz and Fong at the outset of the interaction, rather than because plaintiff previously filed a grievance related to his fall down the stairs.

Because there is no genuine issue of fact on this element of the retaliation claim, the court need not analyze the remaining elements of the claim. Id. The undersigned will recommend that defendant's motion for summary judgment be granted on plaintiff's retaliation claim.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that defendant's motion for an extension of time (ECF No. 120) is granted.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 121) be granted in part and denied in part as follows:

1. Summary judgment be granted on plaintiff's retaliation claim;
2. Summary judgment be denied on plaintiff's excessive force and failure to protect claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

1  shall be served and filed within fourteen days after service of the objections.  The parties are
2  advised that failure to file objections within the specified time may waive the right to appeal the
3  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
4  Dated:  September 7, 2022

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:12
DB/DB Prisoner Inbox/Civil Rights/S/harr0830.msj L fr

15